## Case No. 12,632.

### In re SEELY.

[1 MacA. Pat. Cas. 248.]

Circuit Court, District of Columbia. May Term, 1853.

PATENTS— APPEALS—POWER TO INTERROGATE EXAMINERS—AUTHORITY OF COMMISSIONER —UTILITY.

[1. When, by the act of 1839, the chief judge of the district court was substituted for the board of examiners created by the act of 1836, he succeeded to the same authority possessed by the board to require information of the commissioner and examiners in relation to any invention pending on appeal before him; and his authority in this respect is to be deduced both from the law of 1836 (section 7) and the law of 1839 (section 11). He therefore has ample power to allow an examiner to be interrogated, on the request of an appellant, on the subject of the peculiar nature and features of the invention which it is thought were not sufficiently set forth in the commissioner's report.]

[2. The oath of the applicant is prima facie evidence of the invention, and it is not necessary that there be an actual putting in use: therefore, when the application conforms to the requirements of the office, and the commissioner does not find that the invention falls within any of the conditions mentioned in the law as a sufficient ground for rejection, he has no authority to require additional evidence that the combination will produce the result claimed for it.]

[3. The combination of two blowers, one a suction blower and the other a forcing blower, with a lime kiln for the purpose of increasing the draft, and also a combination whereby the boiler of the blowing engine is heated by the same fire that heats the kiln, both combinations being new, though composed of old elements, held to be patentable, it appearing that a new and better result will be produced.]

[This was an appeal by Samuel Seely from a decision of the commissioner of patents refusing to grant him a patent for an improvement in lime kilns.]

P. H. Watson, for appellant.
Examiner Lane, for commissioner.

MORSELL, Circuit Judge. This is a case where there was no opposing party, and in which the decision rests only upon the examination of the commissioner under the seventh section of the act of 1836, as thereby particularly required of him in the cases therein mentioned. His decision was made the 24th of January, 1853, in which he says, addressing himself to the appellant: "In the matter of your alleged improvement in lime-kilns, I have to state in relation to the first claim that if the draft of a lime-kiln becomes too weak in consequence of extending the height of a kiln for the purpose of economizing heat, the application of any well-known means of increasing the draft is obvious, and cannot be considered a new and patentable invention. The use of two blowers—one a suction blower and the other a forcing blower —in order that one may be used when it would be inconvenient or impracticable to use the other, is considered a matter of common right as obvious as that of choosing between the two that which may be most convenient, and not a thing which can be deemed in a patentable sense a combination. In reference to the third claim—that of heating the boilers of the engine by the same fire that heats the kiln—a like device may be found in those furnaces in which the waste heat is applied to heat the boiler of the blowing engine, which possesses the same power of self-adjustment, if such a power be a practicable thing in either case in accommodating the production of steam to the blast required."

There were two reasons of appeal. The first, very nearly in the language of the clause of the act of congress just referred to, which limits the examination of the commissioner to matters therein expressed, and the second reason is in the terms of the part of the section which requires the commissioner to notify the applicant of his refusal, giving him briefly such information and references as may be useful, &c.

The commissioner answers the first reason by saying that what it states is a mere truism, because an appeal from a refusal of a patent must always be for that reason. Nothing more can be said specially in reply. And he refers to annexed copies of letters of the 9th and 11th of February last, communicating to Mr. Seely the reasons why the office differs from the opinion expressed in the first reason. The substance of the letter of the 9th states that the only things assumed as known devices in the official decision of the 24th ultimo upon the first claim in the case of the lime-kiln are, first, making the kiln high and feeding the limestone in at the top, for the purpose of economizing heat; and second, the use of a fan or other mechanical blower as the means of increasing the strength of a draft. These two devices are so generally known that the office does not consider a special reference to

either of them necessary, so long as the increased addition to the height of the kiln and keeping up a sufficient draft involves only the matter of carrying the economy of heat, and other advantages known to belong to the increase of height, to a greater extent. The application of a known means of strengthening the draft to this particular case is deemed unpatentable. On the second claim the only things assumed to be known, are, first, the forcing blower; second, the suction blower. As it is not pretended that either of these is new, a reference is not necessary. The office intended to be understood as giving its opinion upon the patentability, in view of those two things being known, of using both upon one lime-kiln for the purpose specified. In regard to the third claim, and the thing mentioned as an equivalent, the office has not unqualifiedly stated that the latter does act in practice as a self-regulator. On the contrary, serious doubts are entertained, as intimated in the letter of the 24th ultimo, whether either one will so act in practice. If not, then the device in either case consists simply in not building a separate fire for the engine-boiler, but putting it where it may take its heat from the main fire, and the two things will be considered as equivalent until satisfactory evidence is placed on file that the one claimed has been actually made practically to perform the self-regulating function claimed for it. The letter of the 11th, as to the first two claims, adds nothing. As to the third, the only additional thing is that the decision of the office extends so far as this, that in the absence of the evidence of fact that the thing does perform that function (that is, whether the principle has been or can be made susceptible of sufficiently definite and constant relations in quantity to serve in practice as the means of such a self-regulation of the apparatus as is claimed for it) a patent ought not to be granted for heating the steam-boiler over the kiln fire instead of a separate one. On the day and place appointed by previous notice for the hearing, the appellant appeared by his counsel and Mr. Lane, an examiner from the patent office, the commissioner having laid before me the original papers in the case, together with the grounds of his decision touching the points involved by the reasons of appeal.

Upon the application of the counsel for the appellant, Mr. Lane was sworn by the judge, according to the provisions of the statute, for the purpose of being examined in explanation of the principles of the invention for which the patent was prayed. Objections on the part of the office were made to answering the seventh interrogatory and the twelfth as not being embraced within the rule provided by the statute. The object of both questions was to obtain information on the subject of the peculiar nature and features of the invention forming the very subject of the issue, and essential to the right claimed, and which it was thought had not been sufficiently set forth in the report. In the seventh section of the act of 1836, giving the party a right of appeal to a board of examiners from the decision of the commissioner, it is made the duty of the commissioner to furnish to the board of examiners not only a certificate in writing of his opinion and decision, stating the particular grounds of his objections, and the part or parts of the invention which he considers as not entitled to be patented, but also such information as he may possess relative to the matter under their consideration. By the act of 1839 (chapter 88) this board was abolished, and instead thereof the appeal was authorized to be made to the chief judge of the district court for the District of Columbia, the eleventh section of which statute provides "that at the request of any party interested, or at the desire of the judge, the commissioner and the examiners in the patent office may be examined under oath in explanation of the principles of the machine or other thing for which a patent in such case is prayed for." It is supposed, without the necessity of entering on any particular course of reasoning on the subject, that it must appear clear that the judge succeeded to the same authority that the board possessed to require of the commissioner and examiners like information and to the full extent, and that the two laws, taken together in their provisions on this subject, authorized the examination according to said interrogatories. The objections must therefore be considered overruled. This examiner stated that, so far as he knew, there never had been a blast used in a lime-kiln before this; that the principle of the combination of the two blowers, so far as he knew, had never been used in any other lime-kiln. And so with respect to the feature of generating heat and flame in the same furnace for the purpose of calcining the limestone, and for the steam-boiler for the blowing apparatus, in the sense that it is in no other lime-kiln; also that other features of the invention, so far as related to lime-kilns, were new, and that if the practical results would be as stated it would save considerable fuel, which is one of the most considerable items of expense. This is believed to be the substance. (The paper containing the statement referred to is sent herewith.)

I proceed now to consider the reasons of appeal; and their connection is such that they may both be considered together. They involve the construction of the seventh section of the act of congress of 1836, as to the extent of the jurisdiction of the commissioner in requiring additional evidence in this case to sustain the claim of the appellant to have a patent for his invention, the terms of the law declaring the previous requisites, on a compliance with which the party is entitled; and those conditions in which, if the applicant's case falls, he will not be entitled, are so explicit as to need no other interpreter than itself, and need not be here stated. It

appears to be admitted that the application, specification, drawings, models, and oath have all been made according to the requirements of the law, and it also appears that this is not a case of interference. The invention claimed is a new and useful process, so arranged and adapted, in combination with the kiln for calcining limestone, as to prove greatly beneficial to the public and more economical, by great saving of expense in the cost of fuel, and producing a much better and superior article of lime. The commissioner in his report does not say in terms that he has discovered in the course of his examination any evidence that the invention, as stated in its combination, falls within any of the conditions mentioned in the law as a sufficient ground to justify a rejection; but he intimates that the parts (separated) are old, well-known things, and have been used in other applications; and though considered as combined in the intended application in a lime-kiln, there is no evidence of what the practical result would be. This, I think, is not meeting the proposition as to its practical result. To entitle the party to a patent, I consider it as settled law that (to use the language of Judge Cranch) "none of the patent laws have ever required that the invention should be in use or reduced to actual practice before the issuing of the patent otherwise than by a model, drawings, and a specification containing a written description of the invention, and of the manner of making, constructing, and using the same, in such full, clear, and exact terms as to enable any person skilled in the art to which it appertains to make, construct, and use the same." Heath v. Hildreth [Case No. 6,309]. To these facts the party applicant is required to make oath of the truth; and such, in a case of this kind, is esteemed prima-facie evidence. "Mr. Justice Story has held that this oath on a trial is evidence in the cause of a prima-facie character, and that it is the foundation of the onus probandi thrown upon the 'defendant." Curt. Pat. § 30. In such a state of things, if the commissioner shall deem it sufficiently useful and important, it is his duty to issue a patent therefor, as to which latter matter Curtis (section 28) says: "The subject-matter of a patent must not be injurious or mischievous to society, or frivolous or insignificant." Again: "It must be capable of use for some beneficial purpose; but when this is the case, the degree of utility, whether larger or smaller, is not a subject for consideration in determining whether the invention will support a patent." Nor is this rule of evidence at all unreasonable. The proceeding before the commissioner is an initiatory proceeding, and, from the nature of the subject, not unlike the practice in the incipient stages of many other allowed cases. With respect to the passage quoted by the commissioner from Curtis (section 401) on the subject of the use of old things in combination, the second branch of the very same paragraph shows a full explanation of the rule. The

part quoted is where the rule was intended to apply in a case where the new use was only so far as the occasion was concerned; but he says immediately after, "or, on the other hand, the claim may be for the use of a known thing, in a known manner, to produce effects already known, but producing those effects so as to be more economically or beneficially enjoyed by the public, which the law decides is a patentable subject." The result in this case was new and better. But if further evidence were necessary, I think the examiner has fully supplied it.

Upon the whole, I think there was error in the decision of the commissioner refusing to grant the patent in this case, and I do so decide, and direct that the same be reversed and that a patent be granted as prayed.